Thank you, Your Honor. Ken Miller on behalf of Mr. Mark Manderson. And at the outset, I'd request to split my time evenly with counsel for co-appellant Leslie Manderson. And I would also request to reserve 30 seconds for rebuttal. The ultimate question in this case is the actual loss. And I believe that under Judge Stotler's order, the victims who are going to be receiving restitution are going to receive close to three times as much as they would have received if the Mandersons had behaved lawfully and disclosed all their assets. So is that the correct perspective? Because it seems to me that if you look at it from the other direction, the entire amount of loss or the entire amount that was hidden represents a loss. The entire amount that was hidden would have been $500,000 roughly. And so under Bucell, let me just back up. I think you do have to look at it that way, Your Honor. I think you have to focus on whether the victims are getting more than they would have received if the Mandersons had behaved lawfully. I think that is what Bucell directs the Court to do, look at and compare what actually happened versus what would have happened if they had behaved lawfully. But how could we know that? Because it was their own fraudulent conduct that really prevented the normal claims process from going forward. So isn't your evaluation method speculative? I don't believe so, Your Honor. I think it's actually strongly supported by the records. You have about $1.9 million in debts, about $450,000 to $500,000 in assets. Therefore, if everything had been laid out on the table, the victims all would have received approximately 23 cents per dollar. Yes, Your Honor. I think you do, Your Honor, because, again, I don't think – I think to the extent that there is speculation, it's required by this – the system that this Court has set up. You have to look at it that way. You have to assume that the Mandersons had behaved 100 percent lawfully, had laid their cards on the table. And once you make that assumption, you realize exactly what percentage each one of these victims would have been paid. And we have to really focus on the harm they suffered because of the bankruptcy fraud, not the harm – not the total amount of their debts. That's not what's at issue here because under the restitution statute, the award of restitution has to be limited to the actual harm caused by the criminal conduct. In this case, that actual harm is capped by the amount that they withheld, but that's not the only story. I think you have to look at each victim and what they would have gotten. I understand the Court's concern that, well, we don't actually know what would have happened. If things had been different, they would have been different, and myriad things could have happened. But I don't think that's – that the Court is at liberty to look at it that way. I think the Court has to assume the Mandersons laid their cards on the table and that Chapter 7 proceeded as Chapter 7 bankruptcies are supposed to. All right. That's where I lose you, though, because I don't understand – well, there are a lot of things I don't understand, but among them is, but for this fraud, whether there would have been any bankruptcy at all other than their desire to work this fraud. So I'm not sure that we can make any of the assumptions that you want us to make. Your Honor, I believe that the Court is required to make those assumptions in order to figure out what actually happened. You have $2 million in debt. You have $500,000 in assets. I think it's a fair assumption that there would have been a bankruptcy and that the – I think that the Court has to – if the Court isn't willing to accept that there would have been a bankruptcy, I think that that makes any sort of loss calculation for restitution. I think the Court has to assume that, that – Well, what that would mean is that all of the hidden assets would be available to these – to these victims. Right. But then – but these victims would be getting a windfall because they would have had to have gone on a pro-rat – that's the only fair way to – Well, is it better for them to get a windfall or for the defendant to get a windfall who's busily deceiving and defrauding? Your Honor, the defendant isn't getting a windfall because under these facts, he will have still paid one point – even under – even if the Court accepts my argument, they're still paying $700,000, which is $200,000 more than they would have if they had just given away all their assets prior to declaring bankruptcy. So I don't believe that the Court can properly say that there is a windfall to the Mandersons. What is the amount of restitution? How is it split up? Your Honor, it's – it's laid out in the Court's judgment and commitment order as a pro-rata – How it should be. How it should be is simply a pro-rata distribution based on – How much do you calculate the Subkowski Group in? No, Your Honor, I leave the Subkowskis out because they've already received more than they would have had the bankruptcy proceeded. How do you get to 23 percent? I get to 23 percent because you've got $500,000 in assets that the Mandersons hid. You have $1.9 million in – That's got Subkowskis in. That's got the Subkowskis in because if the bankruptcy had proceeded according to – So if the Subkowskis are in, in the calculation, you get to 23 percent. Yes, Your Honor. All right. Then among the people then who are the victims, what's the split for them of the 506? It would be – Your Honor, they all have claims of varying amounts, so they would just receive 23 cents on the dollar under my calculation, 23 cents on the amount of claim that's laid out in the Court's judgment and commitment order. Does $167,000 sound the ballpark? It does, Your Honor. All right. Okay. And with that, I will – I will submit unless the Court has any questions. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Deputy Federal Public Defender John Rappaport for Defendant Appellant Leslie Connor Manderson. The District Court in this case did not make adequate fact findings regarding Mrs. in the larger context of the offense as required by this Court's precedents. In particular, the District Court excluded from its discussion and its consideration an entire category of relevant conduct. That's the preparations for the offense. When this information is considered as it should have been below, it becomes clear that Mrs. Manderson was substantially less culpable than Mr. Manderson in the overall criminal scheme, and that the District Court's conclusion to the contrary was clearly erroneous. When you look through the record – Is that an abuse of discretion standard? Well, I think this Court reviews the District Court's decision to deny the mitigating role adjustment for clear error. However, I do think that there's a legal error buried in here, which is the fact that the District Court gave no consideration at all to the preparations for the offense, which under the sentencing guidelines it's supposed to consider. So I think if the Court considers that a legal error, it would be reviewed de novo. It also is a legal error that resulted in clearly erroneous fact findings in the denial of the adjustment. Ultimately, that doesn't necessarily turn on the question of whether the District Court had basis to conclude that Mrs. Manderson was as culpable as her husband. And she did go through pretty specifically the reasons why she reached that conclusion. I'm not sure that there's a factual finding that's missing or there's a part that hasn't been considered. The Court was aware of that and said, look, she sat there silently. She didn't talk. Her husband may have been the active player, but she knew what was going on. It was her BMW.  So I conclude that she's too culpable to get away with this reduced sentence, and I'm not going to give it to her. Absolutely, Your Honor. But the problem is that the District Court's discussion, and with respect, the factors that you just recited, all pertain to the conduct involved in the offense itself, Mrs. Manderson's role in signing the filings that were filed in the bankruptcy court or on her conduct at the bankruptcy hearing. But that's just one slice of the picture. The District Court was also supposed to consider the conduct leading up to the 1998 case. I'm pretty sure that's true. Suppose you have two people do a bank robbery. They're both there. They both pull the guns, whatever, both carry away the money. But one of them was the mastermind that planned everything. The other guy just did it. The fact that the first guy did more doesn't mean the second guy didn't commit a bank robbery and shouldn't be held accountable for it. But the Court does have to look at the correct overall picture. This Court has said in Webster, most recently in Tankersley, in Rojas Mian, that the overall criminal scheme is what counts. And if you look through the record for evidence about the preparations for the offense, all or virtually all of it has Mr. Manderson's name on it. Didn't the Court take that into account, though, because in this sense, the ultimate sentence for your client was less by a decent percentage versus her husband? Doesn't that sort of represent an acknowledgment by the Court that she was less culpable but still pretty darn culpable? Your Honor, it may have factored into the Court's ultimate sentencing decision under 3553, but I think that when it comes to the decision whether to grant or deny the mitigating role adjustment, it's pretty clear that the Court did not consider that. If you look at page 85 in the excerpt of the record, which is the Court's second tentative, which it then adopted as its sentencing decision, the Court concludes by finding that Mrs. Manderson has not demonstrated that when compared with her co-defendant husband, her role in the conspiracy and concealment of assets was minimal. Those are the offenses of conviction. But the relevant inquiry here, relevant conduct encompasses far more than the acts involved in the offenses of which Mrs. Manderson was ultimately convicted. In fact, it encompasses more than just the acts encompassed by the indictment. It's the overall criminal scheme, including preparations for the offense. And all of the preparations for the offense were undertaken by Mr. Manderson. And that's something the district court didn't consider, and it's supposed to consider under Webster and Tankersley and the sentencing guidelines themselves. You can see from the district court's decision, it was focused on Mrs. Manderson's culpability in the offenses of which she was convicted. But she pled guilty to those offenses, and it's not surprising that she had substantial culpability for those particular offenses. But the pertinent question is her relative culpability in the overall scheme. Thank you, counsel. I think we understand your position, and you have – I think we gave you extra to make up, so. I appreciate it. And I'll give you some rebuttal time, as well, when the time counts. We'll hear from the government. Your Honors, good morning. Rob Keenan for the government. The defendant's argument on restitution I'll address first. The restitution argument of the defendants is analytically flawed in a couple of ways. First, they argue in their reply brief at page 3 that the issue isn't whether the Subkowskis are victims, but what would have happened if the defendants had acted lawfully. And I would submit to you that that's the same thing. The question of what would have happened if the defendants had acted lawfully is the test for determining  And so it's really just another formulation I submit of the statutory language that defines who and what a victim is, whether or not they have suffered a harm that was proximately and directly caused by the defendant's offense conduct. So I think that's an important point to start with. But the other reason I think that the defense argument is analytically flawed is that they want to argue that the – and do argue – that the Subkowskis are victims for some purposes, but not for others. And there's nothing in the statutory language that supports that argument. I don't think their argument is that the Subkowskis aren't victims. I think the argument is that they wouldn't have obtained as much as the restitution award provided. And frankly, factually, I find that hard to resist because the other creditors would have been there with their hands out. Instead, they were cut out because they collected from the properties once they were found. Actually, at page 19 of the defendant's opening brief, they state that they, quote, agree with the court's finding – it's in the upper third, the first three or four lines – that they agree with the court's finding that the Subkowskis are not victims. Basically, they – and that's – it's a sentence that starts on page 18 and continues on page 19. I'd submit that they're not victims for some limited purpose. I've got to say, I don't see what you're talking about. I'm not sure how it matters to anything. But how does that – I mean, the people that got paid off, and I can't tell you what their names are, they're not treated as victims for restitution purposes because they already got proceeds. Right. That's not what the debate's about. The debate is about whether the people who are left, would they have gotten all of the proceeds. There's always so much to go around. And that is – it's important to note, the defendants try to shift that burden to the government. That's not the way Section 3664E reads. We have the burden of proving that a victim suffered an actual loss and the amount of that loss. Well, here's the problem. There's $509,000 to go around. I've forgotten the number. A certain number of the victims no longer appear as, quote, victims because they actually got proceeds out of the property that they found. So we only have a few of the bankrupt creditors left. And what the court's order does is presume that the people who have already been paid off would have settled for zero, would not have tried to get anything, and the people that were left would have gotten everything. Now, you can talk about burden, but it seems to me that is an unlikely scenario in any real world. Why are the people that got the money assumed that they would have walked away and settled for nothing, so that only the people that are left are going to get anything? Well, I think the main point on that is that the Sobkowski parties, the ones that settled in April of 2000, a couple of years after the bankruptcy case was closed, they got $700,000. And they did so through another mechanism, through separate civil proceedings and two separate state court actions. But it's the same $509,000. True. But those Sobkowski parties were not listed as creditors in the defendant's schedules in the bankruptcy case. They clearly became a ---- They're just a wash. They just are supposed to be out of the calculation, period, from start to finish. Correct. I don't think it's proper to consider them for some purposes and not for others in terms of calculating actual loss. The statute indicates you're supposed to evaluate each victim and decide whether or not, A, they suffered a harm, and, B, whether they suffered a harm directly and proximately caused by the offense. So let me ask you this. The people to whom restitution is ordered in the judgment here, is that the full list of creditors that were listed on the schedules? Schedules F and, I believe, G. So every ---- Correct. These are all of the creditors. One hundred percent of the creditors are here. So your position is because this is the entire list of creditors, the entire amount should be divided up among the creditors, and this other is just a kind of a herring over to one side? That's a settlement that they entered with separate creditors that were not listed in the bankruptcy case. And it's hard to argue that they were victims in the bankruptcy case, that they suffered as a direct and proximate cause of the false statements in this case. Any harm at all. But it's impossible for me to infer that the people who are left identified as victims would have themselves received the whole $506,000, because a part of that was what was used to cause the other people to get pulled off the list. They were sued with. I think the difficulty you identify there is one that goes to the detriment of the defendants, because they have the burden. It's ultimately speculative. Would the Sikowskis have attempted to be listed as ---- Is it really speculative? If the Sikowskis, if they're the ones that were paid off, if they've gone to the trouble of finding the property and doing the things that got them paid off, do you really believe if the bankruptcy filing had gone forward, they would have been listed at that point as creditors because they wouldn't have received anything, and there's still one pile of $506,000? Do you expect to believe the Sikowskis would have settled for zero? I was going to say at a minimum that the amount of their claim, which is what is used in their pro rata analysis, is entirely speculative, because the claims process that the bankruptcy code provides for was aborted. It never occurred. And if the Sikowskis had come in saying, hey, we're entitled to $1.3 million, it's entirely likely that the other creditors would have objected to the amount, to the cause, et cetera. That's all the defendants' obligation. They're trying to reduce the amount by saying the Sikowskis, the pro rata share of other victims, by saying that the Sikowskis should be included as victims, kind of, in some respect. And then they failed to prove that what would have happened? What would the amount of the Sikowskis' claim in the bankruptcy case have been? How would that have been adjudicated? We don't know. The same is also true, by the way, for the Sikowskis. We have a reliable basis. I'm not the Sikowskis. The Sundelt Holdings and Dennis French Parties had a ---- Are they the people that are still left that are to get the money from restitution? They were one of the victims listed in the restitution list. And they had an agreement with the defendants, the Mandersons in this case, fixing that amount. Does the district court's order require the double payment of the value of the concealed assets? I'm sorry? I didn't get that question. Pass it. I'm sorry. The question is whether the district court's calculation or order ends up double paying for the same concealed asset. Is that what you were ---- Yes. I don't think so. You wind up with ---- The Sikowskis, by applying the concealed ---- by applying the rental property to them, so the rental property has gone out of the picture at that point. That's $481,000. Now you're going to ---- that's gone. And if you require the $506,000 to be paid, you're calculating in the concealed assets the $481,000 of rental property. Isn't that right? Well, they made a ---- the defendants entered into a separate agreement in a separate case two years later saying that agreeing to hand over those three rental properties, which are most of their assets. That's how the Sikowskis got all that property. And I think it was valued at $700,000 at the time. But, again, I think it winds up getting somewhat speculative as to the amount of the Sikowskis' claims and how the bankruptcy case would have proceeded. They weren't listed. The Sikowskis' parties were not listed as creditors in the bankruptcy case. They were not ---- You believe they would have been not listed. I mean, remember our premise here is suppose there had been no bankruptcy fraud. Do you think they would have not appeared as creditors in the bankruptcy? Well, they, through some means, discovered the bankruptcy case. But they didn't ---- They discovered the assets. If they dug far enough to find the assets, it's hard to believe they wouldn't pursue a claim in bankruptcy. After two years of effort, they did discover the assets and wrested control of those assets from the Mandersons. But the difficulty, I think, just in terms of applying this, is we wind up with the other creditors who have no reasonable likelihood of obtaining any restitution. And if the assets had been disclosed during the bankruptcy case, they all would have gotten a substantial amount of money. And by concealing the assets and then transferring them to the Sikowskis in a secret deal, which was in part designed to ensure some lack of investigation by the FBI, we wind up with those victims getting nothing at this point, $15,000 for the wife. And the defendants now claim they're penniless. I would last note, just for the record, I earlier noted, page 19, the line I was reading, it refers to the court saying that the district court accurately noting that the Sikowski parties received $700,000. The defendants then say, quote, that is more than double their pro rata share. So the district court found, and the defendants agree, they are not victims for purposes of receiving restitution. Thank you very much. Thank you, counsel. We'll give you a minute for rebuttal. I submit that the bulk of the government's argument is flatly inconsistent with the position that they took in the district court. In my reply brief, I point out that they refer to the Sikowskis as victims at ER 469 and 737. And then I'd like to point out at excerpt of record, page 125, at the sentencing hearing, the government argued one other point. This is page 125, lines 9 through 19. It's one long sentence, and I'm going to skip a portion of the middle of it that I don't think changes the meaning. On one other point, as to the Sikowskis and Mr. Balin and their partnership JBR, and I skip down to line 15, they did receive more than they would have received in a pro rata distribution of the Manderson's bankruptcy estate if the defendants had acted lawfully in the first instance. So we think that's appropriate as well. So in the district court, the government assumed that had the Mandersons behaved lawfully, the Sikowskis would have gotten less than they ultimately recovered. So the government was assuming they would have participated in the bankruptcy as Judge Clifton was suggesting. And with that, I will submit. Thank you. You also may have a moment for rebuttal, although I don't believe the issue was discussed. So I guess there's nothing to rebut. So the cases just argued are now submitted. And we'll move next to United States v. Malara Guzman.
judges: Graber, Clifton, Cjj Reed (Nevada), Dj